Mark D. Stubbs (9353)
Jared B. Stubbs (14103)
**FILLMORE SPENCER, LLC**
3301 North University Avenue
Provo, Utah 84604
Tel: (801) 426-8200
jstubbs@fslaw.com
mstubbs@fslaw.com

Attorneys for Plaintiff

# IN THE UNITED STATE DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MECHELLE BOMAN,<br><br>       Plaintiffs,<br><br>vs.<br><br>SHERWOOD RECOVERY RESORT, LLC; A UTAH LIMITED LIABILITY COMPANY, and dba SHERWOOD HILLS RECOVERY RESORT; and RICHARD MICHAEL KNAPP, Individually and dba SHERWOOD HILLS RECOVERY RESORT<br><br>       Defendant. | **COMPLAINT**<br><br>**(Jury Trial Demanded)**<br><br>Case No. 2:17-cv-00180<br><br>Judge Paul Warner |

COMES NOW Plaintiff, Mechelle Boman, by and through counsel, Mark D. Stubbs and Jared B. Stubbs, and complains against Defendants herein, and respectfully alleges the following:

## PARTIES

1. Plaintiff Mechelle Boman ("Plaintiff") is a resident of the State of Utah. At all times, relevant to this action, Plaintiff was an employee of some or all of the defendants, Sherwood Recovery Resort, LLC dba Sherwood Hills Recovery Resort and/or Richard

1

Michael Knapp, individually and or dba Sherwood Hills Recovery Resort. Plaintiff worked in Utah, and was fully qualified for the job position she held.

2. Defendant Sherwood Recovery Resort, LLC is a Utah limited liability company that has been operating in the State of Utah at all relevant times to this action and has employed Plaintiff at all relevant times to this action and may have done business as Sherwood Hills Recovery Resort.

3. Defendant Sherwood Recovery Resort, LLC has had more than fifteen ("15") employees in the state of Utah at all times relevant to this action.

4. Defendant Sherwood Hills Recovery Resort, is a Utah fictious name or doing-business-as designation of Defendants Sherwood and/or Defendant Knapp at all relevant times to this action who employed Plaintiff in the state of Utah.

5. Defendant Sherwood Hills Recovery Resort and/or Defendant Knapp have more than fifteen (15) employees in the state of Utah.

6. Defendant Sherwood Recovery Resort, LLC and Defendant Sherwood Hills Recovery Resort are known collectively herein as "Defendant Sherwood".

7. Defendant, Richard Knapp ("Defendant Knapp"), is an individual residing in the State of Utah.

8. Defendant Knapp is the owner and/or employer at Defendant Sherwood Recovery Resort, LLC, and Sherwood Hills Recovery Resort.

9. Actions performed by Defendant Sherwood were performed by Defendant Knapp because he was the owner, operator and proxy for Defendant Sherwood and actions performed by

Defendant Knapp were performed by Defendant Sherwood because Defendant Knapp was the owner, operator and proxy for Defendant Sherwood.

## JURISDICTION AND VENUE

10. The jurisdiction of the court is invoked to secure protection and redress deprivation of rights secured by federal laws which prohibit harassment and discrimination against employees because of their gender and which prohibit retaliation.

11. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1331, 1343and 42 U.S.C. § 2000 e-5 and 42 U.S.C. § 1988.  As plaintiffs' state law claims derive from the same nucleus of operative facts as her federal claims, this Court has pendent jurisdiction pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this court pursuant to 42 U.S.C. § 2000e-5(f).

13. The action properly lies in the District of Utah, Central Division pursuant to 28 U.S. C. § 1391(b) because the claim arose in the judicial district.

14. At all times, relevant to the action Defendant Sherwood and Defendant Knapp were subject to the jurisdiction of the court and subject to the applicable federal statutes and state law claims asserted herein.

15. Plaintiff filed a timely charge of discrimination with the Utah Anti-Discrimination Labor Commission (UALD) charging discrimination based on, *inter alia,* sex, and retaliation.

16. Plaintiff received a Right to Sue Notice from the EEOC on or about March 6, 2017 and filed the action within 90 days of her receipt of said Notice.

17. Plaintiff has satisfied all administrative prerequisites associated with her claim of disability discrimination and has exhausted her administrative remedies.

18. Plaintiff was an employee working for a Defendant Sherwood and/or Defendant Knapp from the fall of 2015 to until the spring of 2016.

## FACTS RELEVANT TO ALL CLAIMS

19. Plaintiff is a female.

20. Defendant Sherwood is a drug rehabilitation center near Wellsville, Utah and has an administrative office in Provo, Utah.

21. Defendant Knapp is the owner and agent of Defendant Sherwood.

22. Plaintiff started work in the fall of 2015 with Defendants as an Admissions Specialist in the Provo office.

23. When Plaintiff was hired by Defendants there was an Admissions Director and a secretary that did not like her.

24. Plaintiff would leave work nearly every day in tears because they treated her so poorly.

25. After approximately two months of dealing with them, Plaintiff told Defendant Knapp, the owner of Defendant Sherwood, that she could not put up with the poor treatment she was receiving from the Admissions Director and the secretary any longer.

26. Defendant Knapp confronted the two employees and then terminated them.

27. Defendant Knapp then promoted Plaintiff to Admissions Director.

28. Plaintiff felt that she owed a great deal to Defendant Knapp for his actions.

29. After Defendant Knapp terminated the two employees, he created a working relationship with Plaintiff where he could be close to her and spend time with her.

30. When they began working closely together, Defendant Knapp had Plaintiff start a non-profit LLC.

31. Defendant Knapp told Plaintiff if she worked hard to grow the non-profit LLC with him, she could become an equity partner in Defendant Sherwood.

32. Plaintiff was very excited with the opportunity to become an equity partner in Defendant Sherwood.

33. As time went on Defendant Knapp began to flirt with Plaintiff, but she chose to brush it off.

34. Defendant Knapp flirted with her by spending more time with her at work, calling her on the phone to speak about personal matters, and texting her that he had feelings for her.

35. Soon after Defendant Knapp began flirting with Plaintiff he told her that he had romantic feelings for her, that he had not felt "this way" since he met his wife fifteen years ago.

36. Through his statements and flirtations Defendant Knapp told Plaintiff that he wanted to have an emotional and/or sexual extramarital affair with her.

37. Plaintiff made it very clear that she would not break up her family and be his mistress.

38. However, in spite of telling him that she was not going to be his mistress, Defendant Knapp kept insisting she have an affair with him.

39. After Defendant Knapp gave Plaintiff the promise of an equity partnership in Defendant Sherwood and after he has asked her to have an affair with him, he forced himself upon Plaintiff and kissed her.

40. Plaintiff felt like that if she did not kiss him back she would lose her job.

41. Defendant Knapp told Plaintiff that her future success depended on her spending extra time with him, talking on the phone with him, and having an extramarital relationship with him either sexual or emotional.

42. During this time, Defendant Knapp and Plaintiff had to attend an out of town two-day training seminar.

43. While they were attending the training, Plaintiff stayed in her own hotel room and Defendant Knapp had his one hotel room.

44. While they were at the training Plaintiff found out that Defendant Knapp was using illegal drugs.

45. While they were at the seminar, Plaintiff confronted Defendant Knapp about his drug use.

46. Defendant Knapp admitted to Plaintiff that he was smoking methamphetamines but he promised he would quit.

47. After this conversation, Defendant Knapp asked Plaintiff to spend the night with him and have sex with him in his hotel room.

48. Plaintiff refused.

49. When she refused to have sex with him Defendant Knapp became very angry and began screaming, calling Plaintiff all sorts of profane names.

50. Plaintiff left and went into her hotel room alone.

51. The following day, Plaintiff returned to the training.

52. When Defendant Knapp arrived at the training he began screaming at Plaintiff, calling her awful names, he told her that she "sucked at her job" and that she was fired.

53. Plaintiff left the training after Defendant Knapp told her she was fired.

54. When Defendant Knapp returned from the training, he contacted Plaintiff and apologized for his actions and told her she was not fired.

55. Defendant Knapp also promised Plaintiff he would stop using drugs.


56. The weeks following the training incident were very difficult for Plaintiff.

57. Defendant Knapp began to have frequent outbursts of anger at work.

58. He threw chairs, slammed doors, and called Plaintiff profane names.

59. Defendant Knapp's actions and language scared Plaintiff and she began to distance herself from him at work.

60. Plaintiff stopped working closely with Defendant Knapp, she stopped texting him, and stopped having friendly conversations with him on the phone.

61. After Plaintiff distanced herself from Defendant Knapp began to give her gifts.

62. He gave her a diamond necklace.

63. He gave her a diamond watch.

64. Defendant Knapp gave her close to $1,000 worth of clothes.

65. Plaintiff accepted the gifts because she feared she would lose her job if she did not accept them.

66. During the first of March 2016 Defendant Knapp went on a cruise with his family.

67. Defendant Knapp told his employees not to contacted him while he was on his cruise.

68. While Defendant Knapp was on the cruise with his family, Plaintiff worked long hours managing Defendant Sherwood.

69. One night while Defendant Knapp was on the cruise he contacted Plaintiff and told her that he was drunk and he began demand that she perform sexual acts with him.

70. Defendant Knapp told Plaintiff that "if she was not going to suck his dick, she needed to perform in other ways."

71. Defendant Knapp threatened to demote Plaintiff at work, he told that her she would lose her position as a Director if she would not have a sexual relationship with him.

72. When Defendant Knapp returned to work after his cruise Plaintiff did her best to keep her distance from him.

73. Plaintiff kept her distance because she was afraid of Defendant Knapp and his demands for sex and the threat of losing her job if she did not comply with his demands.

74. Plaintiff was also afraid of Defendant Knapp because his behavior was so erratic.

75. When Plaintiff distanced herself from Defendant Knapp made her working environment even worse.

76. Defendant Knapp demanded Plaintiff spend more time with him, demanded that she respond to his text messages and phone calls, and he demand a sexual relationship.

77. On March 27, 2016, a Sunday, Plaintiff was at home and ill.

78. Defendant Knapp contacted Plaintiff and said he really wanted to see her.

79. Plaintiff refused to meet with him because she was ill and wanted to spend time with her family.

80. After she refused to meet with him Defendant Knapp began sending text messages to Plaintiff's husband.

81. Defendant Knapp told Plaintiff's husband that she was having a sexual affair with a co-worker.

82. On Wednesday March 30, 2017 Defendant Knapp sent Plaintiff a text message and told her that since she would not have a sexual relationship with him that she could not work at Defendant Sherwood.

83.  Defendant Knapp then called Plaintiff a bitch, "that woman", and a prostitute.

84.  After Defendant Knapp called Plaintiff those names she quit.

85.  As Plaintiff began to gather her personal belongings from her office space, a co-worker approached and said that Defendant Knapp told him to escort her out of the building.

86.  Defendant Knapp then texted/emailed Plaintiff that he fired her because she would not "suck his dick or fuck him with [her] body."

87.  Defendant Knapp continued to harass Plaintiff even after he fired her.

88.  He harassed her by asking her to return so they could make their relationship work.

89.  He also called her a prostitute, he threated that if she did not return to work he would ruing her financially and emotionally, and that he would destroy her reputation.

90.  Plaintiff never reported Defendant Knapp to Human Resources ("HR") because the head of HR was also Defendant Knapp's mother-in-law.

91.  Plaintiff was afraid that Knapp would treat her worse or fire her if she reported him to HR.

92.  Additionally, Plaintiff did not feel HR would be able to help her because Defendant Knapp owned Defendant Sherwood.

93.  Defendant Sherwood failed to exercise reasonable care to prevent and promptly correct any sexually harassing behavior.

94.  Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities because HR and Defendant Sherwood were operated and controlled by Defendant Knapp and his family members.

9

## CAUSES OF ACTION
**Defendant Sherwood and Defendant Knapp as Employer**

### COUNT I
**Sexual Harassment**
**(Hostile Work Environment)**

95. Plaintiff reiterates, realleges, and incorporates by reference all paragraphs of the Complaint as set forth herein.

96. Defendant Sherwood**,** by and through its owner Defendant Knapp, subjected Plaintiff to unwelcome, offensive, and sexually harassing conduct during her employment with Defendant Sherwood by reason of her gender.

97. The unwelcome, offensive and sexually harassing conduct included, among other things, soliciting of Plaintiff for sexual acts, calling her obscene and profane names, and excessively texting her and calling her.

98. Defendant Knapp also fired Plaintiff on more than one occasion because she refused to have an affair with him.

99. The unwelcome, offensive and harassing discriminatory conduct was sufficiently severe and pervasive as to unreasonably interfere with the Plaintiff's mental health, emotional well-being, and work performance as it created an intimidating, hostile and offensive working environment.

100. The unwelcome, offensive and harassing behavior continued even after Plaintiff repeatedly requested that it stop.

101. Plaintiff suffered damages as a result of the sexual harassment and the hostile work environment.

## COUNT II
## Sexual Harassment
## (Quid Pro Quo)

102. Plaintiff reiterates, realleges, and incorporates by reference all paragraphs of the Complaint as set forth herein.

103. Defendant Sherwood's actions and the actions of Defendant Knapp constitute sexual harassment.

104. Defendant Sherwood, by and through its owner Defendant Knapp, committed quid pro quo sexual harassment.

105. Defendant Sherwood, by and through its owner Defendant Knapp, told Plaintiff that if she did not conduct sexual acts with Defendant Knapp and/or have an extramarital affair with him she would be fired.

106. As a direct and proximate result of Defendant Sherwood's actions described herein, Plaintiff has suffered from a loss of income and benefits, and has suffered severe emotional distress and mental anxiety, for all of which she should be compensated.

## COUNT III
## Retaliation

107. Plaintiff reiterates, realleges, and incorporates by reference all paragraphs of the Complaint as set forth herein.

108. Defendant Sherwood, by and through its owner Defendant Knapp, intentionally, willfully, and wantonly retaliated against Plaintiff in response to her refusal to perform sexual acts with Defendant Knapp and/or have an extramarital affair with him.

109. As a direct and proximate result of the Defendant Sherwood's conduct described herein,

Plaintiff has suffered from a loss of income and benefits, and has suffered severe emotional distress and mental anxiety, for all of which she should be compensated.

## COUNT IV
## Intentional Infliction of Emotional Distress

110. Plaintiff reiterates, realleges, and incorporates by reference all paragraphs of the Complaint as set forth herein.

111. By and through its owner Defendant Knapp, Defendant Sherwood's harassment, discrimination and retaliatory actions directed against Plaintiff were intentional and inflicted upon Plaintiff severe mental and emotional distress.

112. Defendant Sherwood had knowledge of the actions described herein, and its sanctioning and involvement in the sexual harassment, and retaliatory actions directed against Plaintiff was intentional and inflicted upon Plaintiff severe mental and emotional distress.

113. As a direct and proximate result of the Defendant Sherwood Recovery Resorts' actions described herein, Plaintiff has suffered from a loss of income and benefits, and has suffered severe emotional distress and mental anxiety, for all of which she should be compensated.

114. Defendant Sherwood is liable for the misconduct of its owner, Defendant Knapp, under the doctrine of respondeat superior.

## COUNT V
## Assault

115. Plaintiff reiterates, realleges, and incorporates by reference all paragraphs of the Complaint as set forth herein.

116. Defendant Knapp forced himself upon Plaintiff and kissed her.

117. Said contact was intentional, against Plaintiff's will, without her consent, and unwarranted by social usage and without business justification.

118. The above constitutes unlawful assault upon Plaintiff.

119. As a direct and proximate result of Defendant Sherwood Recovery Resort's owner, Defendant Knapp, as described herein, Plaintiff has suffered from a loss of income and benefits, and has suffered severe emotional distress and mental anxiety, for all of which she should be compensated.

120. Defendant Sherwood is liable for the misconduct of its owner, Defendant Knapp, under the doctrine of respondeat superior.

121. Plaintiff has suffered damages as a result of the assault.

## CAUSES OF ACTION
### Richard Knapp

### COUNT VI
### Intentional Infliction of Emotional Distress

122. Plaintiff reiterates, realleges, and incorporates by reference all paragraphs of the Complaint as set forth herein.

123. Defendant Knapp's intentional actions against Plaintiff, as described herein, were outrageous and intolerable in that they offend the generally accepted standards of decency and morality.

124. Defendant Knapp intentionally engaged in conduct which either the purpose of inflicting emotional distress on Plaintiffs or under circumstances in which any reasonable person would have known that emotional distress would result.

125. Defendant Knapp's harassment, discrimination and retaliatory actions directed against Plaintiff were intentional and inflicted upon Plaintiff severe mental and emotional distress.

126. As a direct and proximate result of the Defendant Knapp's actions described herein, Plaintiff has suffered from a loss of income and benefits, and has suffered severe emotional distress and mental anxiety, for all of which she should be compensated.

## COUNT VII
### Assault

127. Plaintiff reiterates, realleges, and incorporates by reference all paragraphs of the Complaint as set forth herein.

128. Defendant Knapp, while conducting himself in a sexually inappropriate manner, came into physical contact with Plaintiff, causing Plaintiff to suffer.

129. Said contact was intentional, against Plaintiff's will, without her consent and unwarranted by social usage and without business justification.

130. Further, the aforesaid unauthorized restraint and contact placed Plaintiff in a reasonable fear that Defendant Knapp would, against her will and without her consent, continue to conducted himself in a sexually inappropriate manner, and to come into physical contact with Plaintiff.

131. The above constitutes unlawful assault upon Plaintiff.

132. As a direct and proximate result of the Defendant Knapp's actions, Plaintiff has suffered from a loss of income and benefits, and has suffered severe emotional distress and mental anxiety, for all of which she should be compensated.

## COUNT VIII
### Defamation/liable

133. Plaintiff reiterates, realleges, and incorporates by reference all paragraphs of the Complaint as set forth herein.

134. Defendant Knapp sent text messages to Plaintiff's husband telling him that Plaintiff was having an extramarital affair.

135. The allegations were false.

136. Defendant knew the allegations were false when he told Plaintiff's husband.

137. The allegations were not protected speech.

138. The text messages were libelous, *per se*, in that they contained false statements of unchastity, and accusations of acts of moral turpitude.

139. As a direct and proximate result of the Defendant Knapp's actions described herein, Plaintiff has suffered from severe emotional distress and mental anxiety, for all of which she should be compensated.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgement against Defendant Sherwood and Defendant Knapp as follows:

    A.    Compensatory, general and special damages including lost wages, past and future, and/or impairment of power to earn money, emotional pain, emotional distress and humiliation, past and future, past and future medical, psychological and counseling expenses in an amount to be proven at trial but in any case, not less than $350,000;

    B.    Punitive damages for an amount to be proven at trial but not less than $500,000;

    C.    Pre-judgment and post-judgment interest;

    D.    Attorneys' fees pursuant to statute, and costs incurred in prosecuting this action;

    E.    Any other and further relief that the court considers proper.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised in this Complaint.

DATED this 13th day of March, 2017.

    FILLMORE SPENCER, LLC

    /s/ Jared B. Stubbs_____
    Jared B. Stubbs
    Attorneys for Plaintiff